

AUG 07 2019

Clerk, U.S. District Court
Texas Eastern

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

CRAIG CUNNINGHAM, Pro-se )
    *Plaintiff* )
     )        CIVIL ACTION NO.: 4:18-cv-00362-ALM-CAN
v. )
     )
Jasmine Wicks, Axis Benefit Solutions, Inc., Axis Advisory Group, Inc., Moisos
Espinosa, JAY POLITI AND NICK POLITI

    *Defendants.*

## Plaintiff's Second Amended complaint

1. The Plaintiff in this case is Craig Cunningham, a natural person and has a mailing address of 5543 Edmondson Pike, ste 248, Nashville, TN 37211

2. Jay Politi is a natural person and can be served at 7285 Woolmarket Rd Apt H356, Biloxi, MS.

3. Nicholas Politi is a natural person and can be served at 7285 Woolmarket Rd Apt H356, Biloxi, MS.

4. Jasmine Wicks is a natural person and Texas licensed insurance agent who can be served at 120 Werner Rd., Curtis Bay, MD 21226.

5. Axis Advisory Group, Inc. is a Mississippi corporation that can be served via registered agent Nick Politi, 7285 Woolmarket Rd., Apt H356, Biloxi, MS 39532 or 8530 Pointe Aux Chenes Rd., Ocean Springs, MS 39564.

6. Axis Benefit Solutions, Inc., is a Mississippi corporation that can be served via registered agent Nick Politi at 8530 Pointe Aux Chenes Rd., Ocean Springs, MS 39564 or 7285 Woolmarket Rd., Apt H356, Biloxi, MS 39532.

7. Moisos Espinosa is a natural person who can be served at *1449 Laurel oak DR Antioch TN 37013*

8. John and Jane Does 1-5 are currently unknown individuals that initiated the illegal telemarketing calls or are otherwise liable.

## Jurisdiction

9. Jurisdiction of this court arises as the acts happened in this county.

10. Venue in this District is proper in that the defendants transact business here, and the acts and transactions occurred here. Personal jurisdiction is apparent as the defendants are making calls into the state of Texas for the purpose of soliciting Texas Residents to purchase life insurance. Additionally, the agent the Plaintiff spoke to is a licensed Texas insurance agent.

11. Furthermore, the co-defendants are necessary indispensible parties that also placed illegal telemarketing calls to the Plaintiff to sell insurance from Foresters as well by purchasing leads from the same lead vendors named in this complaint and are operating from the same set of circumstances and facts.

## Nature of the Action

12. This case involves a scheme by Americo Financial Life and Annuity Insurance Company ("Americo") (by and through their agent co-defendant's: Jasmine Wicks, Axis Benefit Solutions, Inc., Axis Advisory Group, Inc., Moisos Espinosa, JAY POLITI AND NICK POLITI) to market their insurance products through use of pre-recorded messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (hereinafter referred to as the "TCPA").

13. As described more fully below, the defendant insurance companies have issued a

high volume of insurance quotes – and made substantial sales of products and services – derived through illegal telemarketing calls placed by their co-defendants.

14. Americo both delegated its marketing duties to the co-defendants and ratified the conduct of each and every Co-defendant by accepting the referrals and sales generated by the illegal calls on behalf of Americo. Americo also actively participated in the telemarketing calls through the actions of its agents. Together, these Defendants contacted, and/or caused to be contacted on their behalf, Plaintiff without their prior express written consent within the meaning of the TCPA.

15. This Court has personal jurisdiction over all defendants because, as the companies and agents are licensed to and do conduct the business of insurance in the State of Texas, they have established minimum contacts showing they purposefully availed themselves to the resources and protection of the State of Texas. This Court has personal jurisdiction over each and every co-defendant because the conduct at issue in this case occurred, among other locations, in Texas.

16. This Court has personal jurisdiction over the individual defendants because their conduct at issue in this case occurred, among other locations, in Texas, including his involvement in the pre-recorded telemarketing calls to the Plaintiff. This Court also has personal jurisdiction over the individual defendants because:

a. The individual defendants are 100% owner of their respective corporations;

b. The individual defendants had direct participation in the telemarketing calls that are the subject of this lawsuit;

c. The individual defendants are subject to personal liability as described below.

17. At all times material to this complaint, the individual defendants owned, controlled, or was a corporate officer of their respective corporations, and directed its telemarketing practices.

18. The individual defendants are also individually liable for the telemarketing campaign that is the subject of this complaint pursuant to 47 U.S.C. § 217, which states:

In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person. The individual defendants directly committed the wrongful acts contained in this Complaint. The individual defendants also authorized the telemarketing campaign performed on behalf of Americo.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

38. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

39. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

*[R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.*

*Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.*

40 On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that *"a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." Id. (specifically recognizing "on behalf of" liability in the context of a an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)).*

41 The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See FCC Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).*

42 The co-defendants made the autodialed and prerecorded message calls described herein "on behalf of" Americo within the meaning of the 2008 FCC Declaratory Ruling.

19. On May 9, 2013, the FCC released a Declaratory Ruling reaffirming that a corporation or other entity that contracts out its telephone marketing *"may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."*[1]

43. More specifically, the May 2013 FCC Ruling held that, even in the absence of

evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer *"has apparent (if not actual) authority"* to make the calls. 28 F.C.C.R. at 6586 (¶ 34).

44. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at n.107.

45. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

*[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.*

F.C.C.R. at 6592 (¶ 46).

*46.* Americo knew that the telemarketers have violated the TCPA on Americo' behalf and

failed to take effective steps within their power to force the telemarketers to cease that conduct. Finally, the May 2013 FCC Ruling states that called parties may obtain *"evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information."* Id. at 6592-93 *(¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."* Id. at 6593 *(¶ 46*

## The Defendants' Marketing Scheme

*48.* Americo relies on a series of third parties ("Americo agents") to promote its goods or services. In fact, if an individual wanted to purchase Americo products, the Americo website advises" *You can purchase Americo quality insurance products through a network of independent life insurance agents. Our sales and marketing staff will be happy to recommend a friendly insurance agent in your area who can assist you. If you are not a Americo member and are interested in purchasing a Americo product, please fill out the form below to have an Agent contact you. "*

**Americo maintain interim control over its agents' actions, both as to telemarketing and other activities.**

49. Americo maintains the right to control the content of their agents' advertising.

50. An example of how Americo maintains the right to control their agents advertising is

by:

a. Forester's auditors have the right to review, monitor or oversee any activity related to

the business of soliciting insurance applications for them

b. Americo also requires its agents to maintain an insurance policy insuring Americo for

the actions of the agents.

51. Americo exercised all of these rights during the course of their relationship with each

of the co-defendants.

**Vicarious Liability Under the FCC's Order**

52. The Federal Communication Commission concurs that sellers such as Americo may

not avoid liability by outsourcing telemarketing:

*"Allowing the seller to avoid potential liability by outsourcing its telemarketing activities*

*to unsupervised third parties would leave consumers in many cases without an effective*

*remedy for telemarketing intrusions. This would particularly be so if the telemarketers*

*were judgment proof, unidentifiable, or located outside the United States, as is often the*

*case. Even where third-party telemarketers are identifiable, solvent, and amenable to*

*judgment limiting liability to the telemarketer that physically places the call would make*

*enforcement in many cases substantially more expensive and less efficient, since*

*consumers(or law enforcement agencies) would be required to sue each marketer*

*separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may*

*have thousands of 'independent' marketers, suing one or a few of them is unlikely to*

*make a substantive difference for consumer privacy. "*

*In re Joint Pet. Filed by Dish Network, LLC,* CG Docket No. 11-50, 2013 WL 1934349, ¶

37 (FCC May 9, 2013) (internal citations omitted).

53. Under the standards outlined in the FCC's order and by other Courts interpreting that Order, Americo is liable to the Plaintiff under the following theories:

**a. Direct Liability**

**b. Actual Authority**

**c. Ratification**

**d. Apparent Authority**

## Direct Liability

Americo actively participated in the telemarketing calls that are the subject of this case.

54. The calls to the Plaintiff is an example of how although the co-defendants made the calls and took the Plaintiff's information, Americo itself participated in the call by issuing a quote for insurance.

55. The Plaintiff received a quote from Americo and was offered insurance. Additionally, the Plaintiff was sent letters directly from Americo regarding the insurance quotes and insurance from Americo.

56. It is the purpose of a call, rather than what is said, that matters for TCPA liability. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012).

57. Each call that the co-defendants placed, regardless of how "far" the call recipient permitted the sales pitch to go, was intended by all parties involved to result in sales of Americo' products and services.

58. Defendant Americo issued quotations for insurance wholly derived from the co-defendant's calls, including the ones to the Plaintiff.

59. Americo also issued insurance policies to persons who accepted such quotations

based on the illegal calls from the co-defendants.

## Actual Authority

60. With regard to torts committed by an agent, tort committed by an agent, the

Restatement of Agency provides: § 7.04 Agent Acts With Actual Authority

A principal is subject to liability to a third party harmed by an agent's conduct when the

agent's conduct is within the scope of the agent's actual authority or ratified by the

principal; and

(1) the agent's conduct is tortious, or

(2) the agent's conduct, if that of the principal, would subject the principal to tort

liability.

*See* RESTATEMENT (THIRD) OF AGENCY § 7.04 cmt. d(2) (2006).

61. The purpose of Americo' agents is to serve Americo by soliciting applications

for insurance from consumers on behalf of Americo

Indeed, the co-defendants did this through the pre-recorded telemarketing alleged in this

Complaint.

62. Americo also directed the quality, timing, geographic location and volume of co-

defendant's applicants that it sent to them.

## Ratification

63. In the alternative, Americo repeatedly ratified the co-defendant's illegal marketing

scheme by knowingly accepting the benefits of the co-defendant's activities when

they accepted applications and customers from them.

64. Since at least April of 2013, Americo has been on notice that agents were using pre-

recorded telemarketing calls to generate customers for Americo.

65. Upon information and belief, Americo and their agents were aware of co-defendant's marketing scheme well back to April of 2013 and that thet co-defendants was making calls using an "artificial or prerecorded voice" to generate customers for Americo.

66. Americo has continued to do business with telemarketers that are breaking the law to send customers to Americo for years.

67. In participating in these calls (through the issuance of quotes and policies), Americo manifested an intent to accept the benefit of the co-defendants calling campaigns; including calls that were made by to the Plaintiff that did not result in a quote or policy.

68. Because it accepted the calls' benefits from the co-defendants, including continued customers, Americo cannot avoid the burden associated with their ratification

69. Vicarious liability for TCPA violations can arise out of ratification. As the FCC stated:

Restatement (Third) of Agency § 2.03, cmt. c. As commonly understood under modern agency principles reflected in the Third Restatement, such apparent authority can arise in multiple ways, and does *not* require that "a principal's manifestation must be directed to a specific third party in a communication made directly to that person. *Id.*, reporter's note a. Rather, "a principal may create apparent authority by appointing a person to a particular position." *Id.* Similarly, "a principal may permit an agent to acquire a reputation of authority in an area or endeavor by acquiescing in conduct by the agent under circumstances likely to lead to a reputation." *Id.*, cmt. c. And "[r]estrictions on an agent's authority that are known only to the principal and the agent do not defeat or supersede the consequences of apparent authority for the principal's legal relations" with

others." *Id.* In such circumstances, for example, the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability. *In re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349 \*16, ¶ 34, fn 102.

70. Americo knowingly and actively accepted business that originated through the illegal telemarketing calls complained of herein.

71. The benefits of the relationship Americo requested from the FCC must be accompanied by the burden.

## Apparent Authority

72. Americo gave their agents, including the co-defendants, substantial power to affect their legal relations with third parties, including Plaintiff and consumers generally Americo cloaked their agents with apparent authority to enter into advertising arrangements on their behalf, including lead generation telemarketing which the Plaintiff received.

73. The co-defendants transferred customer information, including the Plaintiff' information, directly to Americo. Thus, the co-defendants has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. Each of the co-defendants are an apparent agents of Americo.

74. By hiring the co-defendants to make calls on behalf of its agents to generate sales leads, Americo "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

75. Each and every co-defendant knew that its calls were resulting in actual quotes for, and sales of, Americo' insurance.

76. These quotes and sales were being performed by Americo themselves.

## FACTUAL ALLEGATIONS

77. In 2015, 2016, 2017 and 2018, the Plaintiff received multiple unwanted automated phone calls to the Plaintiff's cell phones which were not related to any emergency purpose and without the Plaintiff's consent. Despite being more than 20 years from the target demographic, the Plaintiff received over 10 such calls, although the Plaintiff is unsure of the total number of calls at this point as multiple spoofed caller ID numbers were used. Each and every call had a delay of dead air of several seconds indicating that the calls were initiated using an automated telephone dialing system and almost every call contained a pre-recorded message of sorts.

### Calls from Moisos Espinosa

78. The calls were from 718-285-7209 on 5/3/2015 to which was initiated using an automted telephone dialing system (ATDS) and contined a pre-recorded message. The call eventually connected with Moisos Espinosa is a life insurance agent who offered the Plaintiff a policy through Americo. The calls connected to the Plaintiff's cell phones, which were 615-348-1977 and 615-331-7262.

79. This call contained a pre-recorded message which stated: *"Attention, this is a United States consumer alert concerning newly implemented insurance requirements. Due to the recent supreme court ruling on Obamacare...we are calling all consumers between 50 to 85 that may not have enough life insurance and are also*

*in need of significant discounts on their healthcare and prescription drug costs. If you are one of the millions of Americans that are looking for significant discount on your healthcare costs and are also worried about leaving your children or loved ones with a financial burden related to your passing, then this new insurance program is perfect for you. Due to the implementation of the new healthcare and life insurance policies, we can offer you thousands of dollars of life insurance, as well as save you thousands of dollars per year on your healthcare costs without costing you any money out of your pockcet. Press 1 now to speak to a representative to activate your thousands of dollars of healthcare dollars.*" Upon pressing 1, the Plaintiff was connected with someone who claimed to be with United Life insurance associates that passed the Plaintiff on to Moisos Espinosa who ultimately offered the Plaintiff a policy through Americo.

80. Moisos Espinosa directed a telemarketer to place unsolicited calls to consumers including the Plaintiff which were initiated using an automated telephone dialing system and contained a pre-recorded message in violation of 47 USC 227(b)

81. When placing the calls, Espinosa failed to maintanin an internal do-not-call policy as required by 47 CFR 64.1200(d)

82. When Placing the calls, Espinosa failed to state his true business name as required by 46 CFR 64.1200(d)

83. The calls placed by Espinosa violated the Texas Business and commerce code 305.053 by violating the TCPA, 47 USC 227 and by spoofing their caller ID.

84. This defendant should be liable in the amount of $6,000 for two calls.

**Calls placed by or on behalf of One Resource Group or in the alternative by or on**

**behalf of One Resource Group by VIPCO Advisors Inc. VIPCO Advisors, Inc., Axis Advisory Group, Inc., Axis Benefit Solutions, Inc., Nick and Jay Politi**

85. Other calls came from 443-773-2038 on 1/19/2016 and 1/19/2016 and on 4/20/2017 from 216-935-4809, and 216-985-2181 on 5/2/2017 and 216-985-7308 on 5/3/2017 and 404-965-8901 and 888-710-8885 on 5/10/2017 all to 615-331-7262 for a total of 7 calls. These calls all were initiated using an automated telephone dialing system and many contained a pre-recorded message and used vague names such *"senior wealth"* or *"senior benefits"* or *"United Life associates"* that are not their true business names and were initiated using an automated telephone dialing system. Each and every call was placed without the calling party maintaing an internal do-not-call policy. The number 615-331-7262 and 615-348-1977 are the Plaintiff's residential phone number and is used for personal, family, and household use. The calls were placed without the defendants maintaining an internal do-not-call list, and no agents were trained on the use of an internal do-not call list in violation of 47 CFR 64.1200(d).

86. The Plaintiff identified Jasmine Wicks as the agent who called from 404-965-8901 as being from Axis Benefit Solutions or Axis Advisory Group which is owned by Nick and Jay Politi. The call was initiated using an automated telephone dialing system and contained a pre-recorded message.

87. Nick and Jay Politi directed a telemarketer to place unsolicited calls on behalf of Axis Benefit Solutions and Axis Advisory Group to consumers including the Plaintiff which were initiated using an automated telephone dialing system and contained a

pre-recorded message in violation of 47 USC 227(b)

88. When placing the calls, Nick and Jay Politi failed to maintanin an internal do-not-call policy as required by 47 CFR 64.1200(d)

89. When Placing the calls, Nick and Jay Politi failed to state their true business name as required by 46 CFR 64.1200(d)

90. These Defendants should have a judgment assessed against them in the amount of 7 calls x $3000 or $21,000.

**Illegal telemarketing Calls by VIPCO Advisors Inc. VIPCO Advisors, Inc., Axis Advisory Group, Inc., Axis Benefit Solutions, Inc., Nick and Jay Politi**

95. VIPCO Advisors, Inc., Axis Advisory Group, Inc., Axis Benefit Solutions, Inc., Nick and Jay Politi are also involved in a common enterprise in operating the call centers that placed automated calls with pre-recorded messages to the Plaintiff's cell phone.

96. VIPCO Advisors owned and ran call centers in Nashville, TN and Florida. VIPCO Advisors, Inc., was directing the actions of their call center agents and initiating the automated calls with pre-recorded messages that were sent to the Plaintiff.

97. VIPCO Advisors Inc. VIPCO Advisors, Inc., Axis Advisory Group, Inc., Axis Benefit Solutions, Inc., Nick and Jay Politi are all jointly, directly, vicariously, and severally liable parties for the calls in question in this case.

**Actual Damages**

107. The Plaintiff has incurred actual damages in this case, specifically, annoyance, reduced data usage in his cell phone plan, reduced enjoyment of his cell phone, frustruation, increased battery usage for his cell phones, and invasion of privacy.

108. The Plaintiff has been drafted $99 a month for over a year by Americo for an insurance program the Plaintiff doesn't want and doesn't qualify for as a result of the illegal telemarketing calls and was charged over $900 for unwanted insurance services.

## CAUSES OF ACTION:

## COUNT I

### Violations of the Telephone Consumer Protection Act (TCPA)

108. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

109. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing unsolicited automated calls to the Plaintiff's cell phone. These calls violated the TCPA, 47 USC 227(b) as they failed to maintain an internal do not call list and train their agents on the use of it and for placing calls using pre-recorded messages that do not identify the caller or seller of goods or services.

## COUNT II

### Violations of the Texas Business and Commerce Code sectin 305.053

110. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

111. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing unsolicited automated calls to the Plaintiff's cell phone. These calls violated the TCPA, 47 USC 227(b) and therefore also violate the Texas Business and Commerce Code section 305.053 as they placed calls using an automated telephone dialing system and with a pre-recorded message to the

Plaintiff's cell phone without consent and used spoofed caller ID's.

## PRAYER FOR DAMAGES AND RELIEFS

A.   WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that judgment be entered against Defendants

B.   Statutory damages of $1500 for each phone call for violations of the TCPA and $1500 for violations of the Texas Business and Commerce code 305.053.

C.   Pre-judgment interest from the date of the phone calls.

D.   Costs of bringing this action; and

E.   For such other and further relief as the Court may deem just and proper

Respectfully submitted, 8/7/2019

Craig Cunningham
Plaintiff, Pro-se
Mailing address:
5543 Edmondson Pike, ste 248, Nashville, TN 37211, 615-348-1977

CRAIG CUNNINGHAM, Pro-se                )
    *Plaintiff*                )
                             )        CIVIL ACTION NO.: 4:18-cv-00362-ALM-CAN
v.                         )
                             )
Jasmine Wicks, Axis Benefit Solutions, Inc.,  Axis Advisory Group, Inc., Moisos
Espinosa, JAY POLITI AND NICK POLITI

    *Defendants.*

## Plaintiff's Certificate of Service

I hereby certify a true copy of the foregoing was mailed to the defendants in this case.

Respectfully submitted, 8/7/2019

Craig Cunningham

Plaintiff, Pro-se

Mailing address:

5543 Edmondson Pike, ste 248, Nashville, TN 37211, 615-348-1977